**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOEL BARTLETT, Plaintiff, | ) | |
| v. | ) | Civil Action No. 12-1306 (ABJ) |
| GORDON OVERSLAUGH, *et al.*, Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

When plaintiff Joel Bartlett and defendant Gordon Overslaugh were still enjoying a close personal relationship, they shared a home and they shared an equal ownership in their business. Am. Compl. [Dkt. # 50] ¶¶ 16, 21. But now that their professional and personal relationship has deteriorated, they have turned to the courts, each claiming that the other violated fiduciary duties to Suite Services, Inc. ("Suite Services" or "SSI"), the Washington, D.C. corporation in which each retains a fifty-percent stake. *Id.* ¶¶ 3–5, 41–74. In 2012, Bartlett sued Overslaugh in the Southern District of Florida, alleging that Overslaugh had breached fiduciary duties to SSI by converting corporate funds for his personal use. *See generally* Compl. [Dkt. # 1]. After the case was transferred to this Court, Bartlett amended his complaint to add a request for a declaratory judgment, and to add the company as a defendant. Am. Compl. SSI, in its answer to Bartlett's amended complaint, asserted a counterclaim against Bartlett – SSI claims that Bartlett breached his fiduciary duties to SSI, and that he also converted SSI's corporate assets for his personal use. Countercl. [Dkt. # 97].

Bartlett has moved to dismiss SSI's counterclaim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Pl. Thomas M. Bartlett's Mot. to Dismiss Def. SSI's Countercls.

[Dkt. # 101] ("Pl.'s Mot."); Pl. Thomas M. Bartlett's Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 101] ("Pl.'s Mem."). Because the Court finds that SSI's claims are barred by the statute of limitations, and because SSI likely lacks legal authority to sue Bartlett without Bartlett's consent, it will grant Bartlett's motion to dismiss SSI's counterclaim.

**BACKGROUND**

Bartlett founded Suite Services in 1982. Am. Compl. ¶ 13. The company provides "janitorial cleaning services to condominiums, office spaces, towers, and other properties." *Id.* ¶ 11. In 1988, pursuant to a stock assignment, Bartlett and Overslaugh became equal shareholders, each owning a 50% share in the business. *Id.* ¶ 16; *see also* Ex. B to Am. Compl. (stock assignment). In 2005, "[d]ue to a strong and irreparable rift in the personal relationship" of the parties, it became impossible for the couple to be in the same place at the same time. *Id.* ¶ 22. Bartlett alleges that he and Overslaugh then agreed that Bartlett would move away to Florida; Overslaugh would manage the business, and Bartlett would maintain his salary and benefits. *Id.* ¶¶ 23–24. The complaint alleges that the parties abided by that arrangement from 2006 to 2010. *Id.* ¶ 26.

Bartlett alleges that over time, Overslaugh began to neglect the business. He alleges that the company failed to pay state or federal taxes from 2006 until 2012, which ultimately caused a $600,000 tax liability for the company, and that Overslaugh used SSI funds to make personal rent payments. Am. Compl. ¶¶ 28, 38. Bartlett alleges that in 2009, Overslaugh began to freeze him out of the business by eliminating his access to corporate checking and credit card accounts. *Id.* ¶¶ 29, 40. He alleges that in 2010, Overslaugh terminated Bartlett's employment with SSI, and converted him from an employee to an independent contractor. *Id.* ¶ 30. And in 2011, Overslaugh

allegedly again changed Bartlett's employment status, and categorized payments to Bartlett as "shareholder distributions," not salary. *Id.* ¶ 31.

Bartlett filed suit against Overslaugh on February 14, 2012 in federal court in Florida, alleging that Overslaugh breached his fiduciary duties to his former partner. Compl. ¶¶ 35–48. That suit was transferred to this Court. Order (Aug. 3, 2012) [Dkt. # 26]. On April 12, 2013, Bartlett amended his complaint to add Suite Services as a defendant. Am. Compl. Bartlett's Amended Complaint requests a declaratory judgment, alleges that Overslaugh breached his fiduciary duties, requests that the Court permanently enjoin Overslaugh from "continuing to exercise sole control of SSI" and from "withhold[ing] salary, income, distributions, and benefits" from Bartlett, and demands a partition of the parties' jointly-owned real property in Washington, D.C. *Id.* ¶¶ 41–80.

Despite three referrals to mediation, s*ee* Order Referring Case to Mediation (Nov. 5, 2012) [Dkt. # 37]; Order Referring Case to Mag. J. Facciola for Mediation (Apr. 12, 2013) [Dkt. # 48]; Order Re-Referring Case to Mag. J. Facciola for Mediation (Jan. 29, 2014) [Dkt. # 67], and numerous extensions of the parties' mediation deadlines, *see* Min. Order (Sept. 24, 2013); Min. Order (Nov. 26, 2013); Min. Order (Jan. 28, 2014); Min. Order (Feb. 27, 2014); Min. Order (May 6, 2014); Min. Order (July 2, 2014), the case has not come to a negotiated resolution. Although the mediation failed, it did result in an agreement to fund an independent accounting of the company's assets. *See* Status Report (Apr. 1, 2014) [Dkt. # 70].

Faced with a company that was owned in equal shares by individuals with irreconcilable differences, on October 8, 2014, the Court held a status conference and inquired whether dissolution would be the appropriate remedy. *See* Min. Entry (Oct. 8, 2014); Min. Order (Sept. 8, 2014).

On October 21, 2014, Overslaugh filed, in D.C. Superior Court, a shareholder derivative action to dissolve Suite Services pursuant to D.C. Code § 29-312.20(a)(2), and moved to stay the federal court action. *Overslaugh v. Bartlett*, 2014-CA-6635B (D.C. Super. Ct. Oct. 21, 2014); *see* Ex. C to Def.'s Mot. to Stay Proceedings [Dkt. # 80] (Superior Court Complaint).[1] In addition, Overslaugh's Superior Court petition alleged that Bartlett breached his fiduciary duty, wasted corporate assets, and had been unjustly enriched. *Id.* ¶¶ 50–62. While this Court noted that "dissolution may well turn out to be the appropriate remedy for the impasse that has been reached in this case," it denied without prejudice Overslaugh's Motion to Stay and ordered the parties to file routine status reports to update the Court on the proceedings in Superior Court. Order (Jan. 13, 2015) [Dkt. # 86] at 1–3. In light of the Superior Court action, and with plaintiff's agreement, the Court also dismissed as moot Counts III and IV of plaintiff's Amended Complaint, which requested that the Court enjoin Overslaugh from limiting Bartlett's access to the corporation's funds. Min. Order (Apr. 13, 2015).

On May 28, 2015, defendant SSI answered plaintiff's Amended Complaint and counterclaimed against plaintiff Bartlett. Answer & Countercl. [Dkt. # 97]. The counterclaim alleges that it was Bartlett – not Overslaugh – who breached his fiduciary duty and converted corporate assets. Countercl. ¶¶ 25–37. SSI alleges that until 2001, Bartlett and Overslaugh operated the business together, but, from 2002 to 2005, Bartlett began to withdraw from the managerial and day-to-day operations of SSI, and Overslaugh was left with the "lion's share" of

---

1 The Superior Court may dissolve a corporation where: "(A) The directors are deadlocked in the management of the corporate affairs . . . (B) The directors or those in control of the corporation have acted . . . in a manner that is illegal, oppressive, or fraudulent; (C) The shareholders are deadlocked in voting power . . . or (D) The corporate assets are being misapplied or wasted." D.C. Code § 29-312.20(a)(2).

those roles. *Id.* ¶¶ 5–7. SSI also alleges that Bartlett began to withdraw from the business because he "began abusing drugs and alcohol." *Id.* ¶ 5.

According to SSI, since Bartlett's 2005 move to Florida, he has not "participated in SSI's business in any manner whatsoever," and it was Overslaugh who managed the business. *Id.* ¶¶ 7–8. SSI disputes the notion that Bartlett had any authority to receive funds from the company after he relocated, and it alleges that Bartlett improperly used SSI corporate bank accounts and credit cards for his own personal use. *Id.* ¶ 9. SSI claims that between 2006 and 2011, Bartlett used his corporate credit card and company checks to withdraw approximately $315,100 from SSI's corporate accounts. *Id.* ¶¶ 10–14. In addition, SSI alleges that between 2006 and 2011, Bartlett withdrew approximately $504,000 from his SSI capital account, which caused the balance of his capital account to fall to negative $497,621.22. *Id.* ¶¶ 15–16.

SSI alleges that in light of those developments, Overslaugh removed Bartlett's name from the signature cards of SSI's bank accounts in 2009. Countercl. ¶ 17. But, because Bartlett continued to have access to company credit cards, SSI contends that he continued to charge personal expenses to SSI. *Id*. SSI alleges that Bartlett travelled to Washington, D.C. on August 2, 2011, attempted to withdraw corporate funds from SSI's bank account, and was unsuccessful. *Id.* ¶ 19. The counterclaim asserts three counts: breach of fiduciary duties (Count I); conversion (Count II); and a claim for a declaratory judgment that adjudicates whether Bartlett breached his fiduciary duties (Count III). *Id.* ¶¶ 38–40.

On August 3, 2015, Bartlett moved to dismiss the counterclaim under Rules 12(b)(1) and 12(b)(6). Pl.'s Mot.; Pl.'s Mem. Bartlett asserts that SSI lacks legal authority to sue Bartlett without the authorization of SSI's Board of Directors. Pl.'s Mot. at 3–4. Bartlett further argues that Counts I and II of the counterclaim – breach of fiduciary duty and conversion – are barred by

the three-year statute of limitations. *Id.* at 4. Finally, Bartlett maintains that SSI is not entitled to a declaratory judgment; SSI in its counterclaim cannot ask the Court to determine "the ownership rights and responsibilities of Bartlett and Overslaugh" because Overslaugh is not a party to the counterclaim. *Id.* SSI responded to the motion, Countercl. Pl. SSI's Opp. to Mot. to Dismiss [Dkt. # 105] ("SSI's Opp."), and Bartlett replied. Def. Thomas M. Bartlett's Reply Mem. to Pl. SSI Opp. to Mot. to Dismiss [Dkt. # 106] ("Pl.'s Reply").

On September 1, 2015, the Superior Court dismissed without prejudice Overslaugh's petition to dissolve Suite Services. Order Granting Joint Mot. to Dismiss Pet. for Dissolution of Suite Servs., Inc. [Dkt. # 107-1] at 1. The court determined – apparently at the joint request of Overslaugh and Suite Services – that the pendency of this matter counseled in favor of dismissing the petition. *Id.* at 2. The Court explained that "potential inequitable consequences" may result from the dissolution while this proceeding was ongoing:

> The equitable considerations raised by [Overslaugh and SSI] included (1) Suite Services' inability to prosecute the claims it has asserted against Defendant Bartlett in this federal matter should Defendant Bartlett gain control of the corporation and terminate the corporation's counsel of record; (2) the substantial impact on the value of the corporation as well as the terms and conditions of the sale of shares, in the event that Plaintiff Overslaugh or Defendant Bartlett were ordered to return or disgorge funds belonging to the corporation; and (3) Suite Services' recent acceptance into the District of Columbia's voluntary disclosure program for the purpose of negotiating the payment of past-due sales taxes.

*Id.* In other words, "[w]ere Defendant Bartlett permitted to purchase Plaintiff Overslaugh's shares prior to the resolution of this federal court proceeding, it is all but certain that Defendant Bartlett would terminate Suite Services' counsel of record and dismiss the corporation's counterclaims asserted against him in that proceeding, thereby leaving the corporation unable to prosecute what

may be meritorious claims." *Id.* at 3. The court therefore dismissed the petition for dissolution without prejudice.[2]

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

---

2 In light of this Memorandum Opinion and Order granting plaintiff's motion to dismiss the counterclaims and altering the equitable landscape, the parties may wish to return to Superior Court to determine the dissolution claim.

1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I. SSI's claims are time barred.

Bartlett argues that SSI's claims of breach of fiduciary duty and conversion are barred by a three-year statute of limitations. Pl.'s Mot. at 15; *see* D.C. Code § 12-301(8). A motion to dismiss may be granted on statute of limitations grounds only if "the facts giving rise to the defense are apparent on the face of the complaint." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005). As the D.C. Circuit has cautioned, "because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

SSI seems to concede that it filed its counterclaim outside of the three-year statute of limitations. SSI's Opp. at 14. However, it argues that the statute of limitations should be equitably tolled for two reasons: first, because Bartlett took affirmative steps to prevent SSI from suing in time by trying to limit its access to counsel, *id.* at 16, and second, on the grounds that the torts of breach of fiduciary duty and conversion are continuing torts which toll the statute of limitations until they are completed. *Id.* at 17. Because the Court finds – on the face of the counterclaim –

that Bartlett's alleged interference with SSI's access to counsel occurred after the statute of limitations had already expired, and neither cause of action was continuing in nature, it will grant Bartlett's motion to dismiss those claims.

**A. All of the alleged wrongdoing took place more than three years before the complaint was filed.**

Under D.C. law, claims of breach of fiduciary duty and conversion are subject to the catch-all three-year limitation period found in D.C. Code § 12-301(8). Neither party contests the applicability of the statute of limitations. Pl.'s Mem. at 15; *see* SSI's Opp. at 14 (not addressing whether it complied with the limitations period, and arguing that "[t]he statute of limitations should be equitably tolled."). SSI filed its counterclaim on May 28, 2015. Countercl. Therefore, if the breaches of fiduciary duties and alleged conversions took place before May 28, 2012, they are time barred.

SSI does not allege any breaches of fiduciary duty or conversion during 2012 or later; it alleges only discrete wrongful acts in 2006 and 2007 and during the period between 2008 and 2011. Countercl. ¶¶ 10–13, 15–19. Specifically, the counterclaim alleges that in January 2006, Bartlett issued checks from SSI and used SSI's credit cards to pay for personal expenses totaling approximately $48,515.00. *Id.* ¶¶ 10–11. SSI claims that later, in 2007, Bartlett again issued company checks totaling approximately $23,435.00 to cover his own personal, non-business expenses. *Id.* ¶ 12. In 2008, Bartlett allegedly withdrew approximately $47,150.00 from SSI's bank account. *Id.* ¶ 13. SSI alleges that similar discrete acts of malfeasance took place until Overslaugh stopped Bartlett from being able to access corporate funds in August of 2011. *Id.* ¶¶ 15–19. SSI was therefore on notice of its cause of action for breach of fiduciary duty and conversion as early as 2006, and the statute of limitations began to run at that time. *See Jung v.*

*Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004) ("The statute of limitations . . . begins to run once a plaintiff has inquiry notice of a potential cause of action.").

It is true that the counterclaim alleges more wrongdoing in successive years. But because none of the allegations in the counterclaim describe a breach of fiduciary duty or conversion of SSI's funds after May 28, 2012, all of the claims are barred by the three-year statute of limitations.

**B. Plaintiff's alleged interference with SSI's retention of counsel did not toll the statute of limitations.**

As SSI points out, the statute of limitations may be tolled in certain circumstances. Under the equitable estoppel doctrine, the limitations period can be tolled when a defendant has taken active steps to prevent a claimant from litigating its claims in time. *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003), citing *Currier v. Radio Free Europe*, 159 F.3d 1363, 1367 (D.C. Cir. 1998). "Equitable estoppel precludes a defendant, because of his own inequitable conduct – such as promising not to raise the statute of limitations defense – from invoking the statute of limitations." *Id.* Although a plaintiff need not plead equitable estoppel in the complaint because it is an "affirmative defense that [the] defendant must prove," the plaintiff must set forth sufficient facts to justify the application of the equitable estoppel doctrine if a "defendant raises the statute of limitations as a defense." *Firestone*, 76 F.3d at 1210.

In order to prove its entitlement to equitable estoppel, SSI must make a substantial showing. As the D.C. Circuit has explained, "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). "Federal courts have typically extended equitable relief . . . sparingly" and have been reluctant to extend it where "the claimant failed to exercise due diligence in preserving his legal rights" *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

SSI argues that it is entitled to equitable estoppel of the limitations period because Bartlett interfered with its ability to retain counsel and advance its claims against Bartlett on a timely basis. SSI's Opp. at 16. SSI points to an email exchange from August 2013, several more exchanges from 2015, and a transcript of a status conference held in prior proceedings in this action from August 2015. *See* Ex. 1–5 to SSI's Opp. [Dkt. # 105-2, 105-3, 105-4, 105-5, 105-6]. But the evidence from 2013 does not support SSI's contention, and the other events took place after the limitations period had already expired.

The August 2013 emails relate to efforts made by counsel for Bartlett to serve the amended complaint that added SSI as a defendant. *See* Ex. 1 to SSI's Opp. He wrote to Overslaugh's attorney to ask if Overslaugh would accept service on behalf of the company:

> [A]s you know a defendant must be served within 180 days of filing a lawsuit. I don't know who will represent SSI – only Mr. Overslaugh has control over retention of an attorney as de facto leader of SSI. However, that does not alter the fact that SSI must be served.
>
> Normally, a registered agent accepts process. In our case, Thomas Bartlett is the registered agent according to SSI filing records . . . However, due to this unusual circumstance, I think the more prudent course of action is to have Mr. Overslaugh, or another authorized corporate officer, voluntarily accept service on behalf of SSI.

*Id.* at 2–3. This reference to the fact that it was Overslaugh who had de facto control over SSI's access to counsel cannot be characterized as an attempt by Bartlett to obstruct SSI's ability to prosecute its claims.

It is true that after SSI secured counsel, Bartlett objected to the selection of an attorney without his consent, and he took steps to terminate the representation. *See* Exs. 2–5 to SSI's Opp. But those efforts took place long after the limitations period had already expired. SSI cannot now claim that Bartlett should be equitably estopped from invoking a statute of limitations that expired in 2009 because of his actions in 2015.

**C. SSI's continuing tort defense to the statute of limitations fails.**

SSI next asserts that it should be excused from the statute of limitations because its claims of breach of fiduciary duty and conversion constitute continuing torts that toll the statute of limitations. For a claim to constitute a continuing tort, it must be "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact . . . that reveals its illegality." *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012), quoting *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997). A continuing tort must be "a continuous and repetitious wrong . . . with damages flowing from the act as a whole" rather than a series of discrete wrongs. *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 730 (D.C. Cir. 2008), quoting *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002).

A review of the counterclaim makes clear that SSI's claims for breach of fiduciary duty and conversion were not continuous in nature; SSI has alleged more than one incident involving a distinct breach of fiduciary duty, or the conversion of corporate assets that took place over a period of years. As the Eighth Circuit has reasoned, a breach of a fiduciary duty or conversion arising from separate transactions or financial distributions are not continuous torts, because those acts "are 'separate, distinct, and could have been challenged by a plaintiff' when they occurred." *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 350 (8th Cir. 2008), quoting *Hope v. Klabal*, 457 F.3d 784, 793 (8th Cir. 2006); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) ("Like too many legal doctrines, the 'continuing violation' doctrine is misnamed. Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitle you to wait until year 15

(assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for the wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury. . . It is thus a doctrine not about a continuing, but about a cumulative, violation.").

SSI could have brought claims for breach of fiduciary duty or conversion after Bartlett allegedly unlawfully dipped into the corporate coffers on any of the occasions between 2006 and 2011 described in the counterclaim. Each instance constituted a "discrete act" for which Bartlett could have been held liable, and from which damages allegedly flowed. *See Roemmich*, 526 F.3d at 350.

Therefore, counts I and II of its counterclaim are barred by the statute of limitations and will be dismissed.

## II. Even if SSI could avoid the statute of limitations problem, it likely lacks legal authority to sue Bartlett.

Bartlett also maintains that SSI lacks the legal authority to bring claims against him because, as a fifty-percent shareholder of SSI, Bartlett would have had to authorize the corporation to sue, and here, he obviously did not do so. Pl.'s Mem. at 9–10. Under the D.C. Code, "[a]ll corporate powers shall be exercised by or under the authority of the board of directors of the corporation and the activities and affairs of the corporation shall be managed by or under the direction, and subject to the oversight, of its board of directors . . . ." D.C. Code § 29–306.01. Part of this management authority includes "decisions to litigate on behalf of the corporation." *Behradrezaee v. Dashtara*, 910 A.2d 349, 354 (D.C. 2006). However, "to enforce a corporate cause of action against officers, directors, and third parties," a shareholder must bring a derivative claim. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). As the Supreme Court explained, "the purpose of the derivative action was to place in the hands of the individual

shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.*, citing *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949).

*Behradrezaee* and *Kamen* do not resolve the key question in this case, which is whether a fifty-percent shareholder may authorize the corporation to sue the other fifty-percent shareholder. As another federal district court has observed, "[t]here is no clear rule about when a corporation can initiate litigation without the authorization of its board of directors." *Advanced Optics Elecs., Inc. v. Robins*, 633 F. Supp. 2d 1237, 1246 (D.N.M. 2008). And neither the parties nor the Court has identified any authority from this jurisdiction to support the proposition that SSI could sue Bartlett without his consent as an equal shareholder.[3]

Bartlett has directed the Court to authority from the state courts of New York, though, that does relate to this question. *See* Pl.'s Mem. at 11–12. In New York, a fifty-percent shareholder may not file suit on behalf of the corporation against the other fifty-percent shareholder, because of a specific provision in the New York Corporations Law that implicitly authorizes a corporation to have two equal shareholders. *COR Mktg. & Sales, Inc. v. Greyhawk Corp.*, 994 F. Supp. 437, 441 (W.D.N.Y. 1998), citing N.Y. Bus. Corp. Law § 702(a) (McKinney 1997). That law explains that "[t]he board of directors shall consist of one or more members." N.Y. Bus. Corp. Law § 702(a). The court in *COR Marketing* reasoned that because "the Legislature has implicitly

---

3 Plaintiff cites "*Grimes v. McDonald*, 673 A.2d 1207, 1215 (D.C. 1996)" for the proposition that a corporation, through its board of directors, must make the decision to assert a claim on behalf of that corporation. Pl.'s Mem. at 9. But as SSI correctly points out – the case that plaintiff cites is neither captioned "Grimes v. McDonald," nor is it from the D.C. Court of Appeals. *See Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). *See* SSI's Opp. at 8. In any event, *Grimes* was a shareholder derivative claim in which a shareholder failed to demand that the Board, instead of the shareholder, bring a particular claim, and the court reiterated the importance of the demand requirement. *Grimes*, 673 A.2d at 1215. Thus, even if it were from this jurisdiction, it is distinguishable.

recognized the desire for equal control in some closely held corporations," it would "disregard[] fundamental rules of agency law" if a corporation was allowed to remedy a deadlock "by an exercise of presidential power." *COR Mktg.*, 994 F. Supp. at 441 (internal citations and quotations omitted). The New York state courts therefore find that, in such a circumstance, "the action should be converted to a shareholder derivative action." *Id.*; *see also Borkowski v. Fraternal Order of Police, Phil. Lodge No. 5*, 155 F.R.D. 105, 110 (E.D. Pa. 1994) ("The proper vehicle for a suit, when the gravamen of the complaint is injury to the corporation, and the shareholders are deadlocked, is a shareholder's derivative action."). That authority would point in the direction of dismissing, or at least converting, SSI's claim.

SSI counters that the New York case is distinguishable because it is based upon – and therefore limited to – a specific provision in the New York Business Corporations Law. SSI's Opp. at 11. But the provision at issue in *COR Marketing* is almost identical to the corresponding provision in the D.C. Code. The statute in *COR Marketing* that formed the basis of the court's holding provided that "[t]he board of directors shall consist of one or more members." N.Y. Bus. Corp. Law § 702(a). The D.C. Code similarly provides that "[a] board of directors shall consist of one or more individuals." D.C. Code § 29-306.03.

New York law on this point is clear – "a shareholder derivative action is an appropriate method for one fifty-percent shareholder to obtain relief in the name of the corporation against the other fifty-percent shareholder." *Barry v. Curtin*, 993 F. Supp. 2d 347, 352–53 (E.D.N.Y. 2014), quoting *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 222 (E.D.N.Y. 2005); *see also Ono v. Itoyama*, 884 F. Supp. 2d 892, 895 (D.N.J. 1995) (citing "ample authority" under New York law for the proposition that a derivative action, not a direct action, is the appropriate remedy in a dispute between 50% shareholders), *aff'd*, 79 F.3d 1138 (3d Cir. 1996).

Therefore, one could reason that a derivative action was the only option available to Overslaugh here. But the Court need not resolve the question or address the other practical implications of this conundrum, *see* SSI's Opp. at 7, because even an action by Overslaugh himself would have been out of time, and there could be no equitable argument made that Bartlett interfered with Overslaugh's rights to obtain his own lawyer.

**III. SSI's declaratory judgment claim is moot in light of the dismissal of the remaining counts in the counterclaim.**

In Count III, SSI seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).[4] Countercl. ¶¶ 38–40. SSI requests that the Court declare:

> (1) that [] Bartlett breached his fiduciary duties owed to SSI; (2) that Bartlett's access to and removal of funds from SSI and otherwise incurring [of] debts on behalf of SSI that were unrelated to SSI's business were improper; [] (3) that Bartlett must account for and repay all funds he extracted from SSI that were not related to SSI's business; and (4) [a]fording any and all other and further relief to SSI as justice and its cause require.

Countercl. at 23–24.

In general, a count for a declaratory judgment "is not cognizable as a separate cause of action, but is more properly included in the[] prayer for relief." *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 45 (D.D.C. 1996). More importantly, "the Declaratory Judgment Act 'is not an independent source of federal jurisdiction'" but only "presupposes the existence of a judicially remediable right." *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002), quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). "Accordingly, courts

4 The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

have broad discretion to decline to enter declaratory judgments." *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010).

A court may dismiss as moot a claim for declaratory relief where the claim duplicates or is wholly subsumed by another claim that has been dismissed. *Id.* Here, SSI's claim for a declaratory judgment is wholly subsumed by its claim for breach of fiduciary duty and conversion. Therefore, Count III of the counterclaim will be dismissed as moot.

**CONCLUSION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the foregoing reasons, it is hereby

**ORDERED** that plaintiff Bartlett's Motion to Dismiss defendant Suite Services, Inc.'s Counterclaim [Dkt. # 101] is **GRANTED**, and it is

**FURTHER ORDERED** that defendant Suite Services, Inc.'s Counterclaim is **DISMISSED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: March 11, 2016